**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| THE PHOENIX INSURANCE COMPANY, | ) | |
| TRAVELERS CASUALTY INSURANCE | ) | |
| COMPANY OF AMERICA, THE | ) | |
| TRAVELERS INDEMNITY COMPANY, and | ) | |
| TRAVELERS PROPERTY CASUALTY | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | Case No.  3:23-cv-3303 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ACKERCAMPS.COM LLC, K.V., a minor, by | ) | |
| and through her Guardian, LYNAE VAHLE, | ) | |
| and LYNAE VAHLE, individually and on | ) | |
| behalf of all others similarly situated, | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, The Phoenix Insurance Company, Travelers Casualty Insurance Company of America, The Travelers Indemnity Company, and Travelers Property Casualty Company of America (collectively, "Travelers"), by and through their attorneys, Skarzynski Marick & Black LLP, and for their Complaint for Declaratory Judgment against Defendants, Ackercamps.com LLC ("Ackercamps"), K.V., a minor, by and through her Guardian, Lynae Vahle, and Lynae Vahle, individually and on behalf of all others similarly situated ("Vahle"), state as follows:

### NATURE OF DISPUTE

1.      This is a declaratory judgment action, brought pursuant to 28 U.S.C § 2201, regarding an insurance coverage dispute. Specifically, Travelers seeks a declaration that it has no obligations under certain policies of insurance issued to Togetherwork Holdings, LLC, which name Ackercamps as an additional named insured by endorsement, (collectively, the "Travelers Policies") with respect to a lawsuit filed by K.V., a minor, by and through her Guardian, Lynae

1

Vahle, and Lynae Vahle, against Ackercamps styled, *K.V., a minor, by and through her Guardian, Lynae Vahle, and Lynae Vahle, individually and on behalf of all others similarly situated v. Ackercamps.com LLC*, Case No. 3:22-cv-02256, United States District Court for the Southern District of Illinois (the "Vahle Lawsuit"). The Vahle Lawsuit seeks injunctive and declaratory relief, statutory damages, and attorneys' fees and costs under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"), regarding Ackercamps' alleged practice in collecting "profile photographs" that are run through Ackercamps' facial recognition software, which is then used to identify a specific person's facial geometry and to detect matches within Ackercamps' online photo galleries for viewing by consumers. Travelers denied coverage to Ackercamps for the Vahle Lawsuit.

2.      The allegations of the Vahle Lawsuit do not seek damages that are potentially covered by the Travelers Policies. Consequently, Travelers seeks a declaration that (i) it does not have any obligation to reimburse or pay Ackercamps for any expenses Ackercamps has incurred and will incur in the defense of the Vahle Lawsuit, and (ii) it does not have any obligation to pay all or part of any judgment or settlement that Ackercamps enters into in the Vahle Lawsuit.

## PARTIES

3.      The Phoenix Insurance Company ("Phoenix") is a Connecticut corporation that is authorized to transact business and has transacted business in Illinois.

4.      Travelers Casualty Insurance Company of America ("Travelers Casualty") is a Connecticut corporation that is authorized to transact business and has transacted business in Illinois.

5.      The Travelers Indemnity Company ("Travelers Indemnity") is a Connecticut corporation that is authorized to transact business and has transacted business in Illinois.

6.     Travelers Property Casualty Company of America ("Travelers Property") is a Connecticut corporation that is authorized to transact business and has transacted business in Illinois.

7.     Ackercamps is a Delaware limited liability company and maintains its principal place of business in New York. Upon information and belief, the sole member of Ackercamps is Togetherwork Holdings, LLC. Togetherwork Holdings, LLC is a Delaware limited liability company and maintains its principal place of business in Georgia. Upon information and belief, the sole member of Togetherwork Holdings, LLC is GI TW Intermediate Holdings, LLC, a limited liability company organized under Delaware law. Upon information and belief, the sole member of GI TW Intermediate Holdings, LLC is GI TW Topco Inc., a Delaware corporation with its principal place of business in San Francisco, California.

8.     Upon information and belief, K.V., a minor, is an individual residing in Illinois.

9.     Upon information and belief, Vahle is an individual residing in Illinois and claims to be a representative of a putative class of individuals defined as, "All persons who had their biometric identifiers, facial geometry, faceprints, or facial data captured, collected, or received by [Ackercamps] while residing in Illinois from five years preceding the date of filing of this action through the date a class is certified in this action."

10.     K.V. and Vahle have or may have an interest that might be affected by the declaratory judgments sought by Travelers and accordingly are named as nominal defendants in this declaratory judgment action. Travelers does not seek any relief against K.V. or Vahle or the putative class that Vahle seeks to represent.

## JURISDICTION AND VENUE

11.     This declaratory judgment action is brought pursuant to 28 U.S.C § 2201.

3

12.     The jurisdiction of this Court is premised upon 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, in this action seeking a declaration of no insurance coverage for an underlying class action for alleged violations of the Illinois Biometric Information Privacy Act.

13.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

14.     An actual and justiciable controversy exists between Travelers on one hand and Ackercamps on the other regarding the scope and extent of insurance, if any, provided under the Travelers Policies with respect to the relief sought in the Vahle Lawsuit.

### THE VAHLE LAWSUIT

15.     A true and accurate copy of the Complaint filed in the Vahle Lawsuit on August 29, 2022, is attached hereto as Exhibit A (the "Vahle Complaint").

16.     Ackercamps first notified Travelers of the Vahle Lawsuit on October 12, 2022, and provided a copy of the Vahle Complaint.

17.     The Vahle Complaint alleges that Ackercamps, doing business as Bunk1, partners with summer camps across the United States to connect consumers with a specific person at a camp through access to online photo galleries with facial recognition. (Ex. A, ¶¶ 3; 7).

18.     The Vahle Complaint alleges that Ackercamps' camp photo and video gallery is equipped with facial recognition software that sends instant notification whenever a photo of a specific person is posted. (*Id.* at ¶ 8).

19.     The Vahle Complaint alleges that for Ackercamps' system to work, consumers must upload a high resolution, closeup "profile photo" of their specific person so that Ackercamps'

facial recognition software can identify the person's facial geometry and detect possible matches within its online photo galleries. (*Id.* at ¶ 9).

20.     The Vahle Complaint alleges that Ackercamps' online photo galleries function by scanning, collecting, storing, and using customers' or potential customers', including campers and potentially counselors, staff, siblings, parents, and friends, facial biometrics. (*Id.* at ¶ 10).

21.     The Vahle Complaint alleges that BIPA expressly obligates Ackercamps to obtain an executed, written release from an individual prior to the capture, collection, and/or storage of an individual's biometric information. (*Id.* at ¶ 13).

22.     The Vahle Complaint alleges that burying a vague reference to biometric information in an online privacy policy is not sufficient to comply with BIPA's requirements. (*Id.* at ¶ 13).

23.     The Vahle Complaint alleges that BIPA further obligates Ackercamps to inform its potential customers in writing that biometric information is being collected or captured; to tell its potential customers in writing for how long it will store their biometric information, and any purposes for which biometric information is being captured, collected, and used; and to make available a written policy disclosing when it will be permanently destroyed. (*Id.* at ¶ 14).

24.     The Vahle Complaint alleges that Ackercamps captured, collected, received through trade, and/or otherwise obtained biometric information of their Illinois customers or potential customers, like K.V. and Vahle, without properly obtaining a written executed release, and without making the required disclosures concerning the collection, storage, use, or destruction of biometric information. (*Id.* at ¶ 18).

25.     The Vahle Complaint alleges that Ackercamps lacks retention schedules and guidelines for permanently destroying K.V., Vahle, and the putative class members' biometric

information and that Ackercamps has not and will not destroy K.V., Vahle, and the putative class members' biometric data, as required by BIPA. (*Id.* at ¶ 19).

26.    The Vahle Complaint alleges that K.V., Vahle, and the putative class members are aggrieved by Ackercamps' failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the consumers' last interactions with the company. (*Id.* at ¶ 20).

27.    The Vahle Complaint seeks to certify a class of similarly situated individuals under BIPA, specifically, "[a]ll persons who had their biometric identifiers, facial geometry, faceprints, or facial data captured, collected, or received by [Ackercamps] while residing in Illinois from five years preceding the date of filing of this action through the date a class is certified in this action." (*Id.* at ¶ 72).

28.    The Vahle Complaint asserts two causes of action, namely: violation of 740 ILCS 14/1, *et seq.* (BIPA) seeking monetary damages (*id.* at ¶¶ 77-90); and violation of 740 ILCS 14/1, *et seq.* (BIPA) seeking injunctive relief (*id.* at ¶¶ 91-104).

29.    The Vahle Complaint seeks an Order: certifying the Vahle Lawsuit as a class action; designating and appointing K.V. and Vahle as representatives of the class and their counsel as class counsel; awarding statutory damages pursuant to BIPA; awarding injunctive relief pursuant to BIPA; and awarding K.V., Vahle, and the putative class members attorneys' fees and costs.

### FACTS PERTAINING TO THIS INSURANCE COVERAGE DISPUTE

**Primary Policies**

30.    Phoenix issued to Togetherwork Holdings, LLC the following primary Office Pac Plus policies and Commercial Insurance policy containing commercial general liability coverage parts, which name Ackercamps as an additional named insured by endorsement, for the designated

policy periods:

- Policy No. 680-4J047858-17-42 for the period of 05/09/2017 to 05/09/2018 (the "2017 Phoenix CGL Policy") (a certified copy of the 2017 Phoenix CGL Policy is attached hereto as <u>Exhibit B</u>);

- Policy No. 680-4J047858-18-42 for the period of 05/09/2018 to 05/09/2019 (the "2018 Phoenix CGL Policy") (a certified copy of the 2018 Phoenix CGL Policy is attached hereto as <u>Exhibit C</u>);

- Policy No. 680-4J047858-19-42 for the period of 05/09/2019 to 05/09/2020 (the "2019 Phoenix CGL Policy") (a certified copy of the 2019 Phoenix CGL Policy is attached hereto as <u>Exhibit D</u>);

- Policy No. 680-4J047858-20-42 for the period of 05/09/2020 to 05/09/2021 (the "2020 Phoenix CGL Policy") (a certified copy of the 2020 Phoenix CGL Policy is attached hereto as <u>Exhibit E</u>);

- Policy No. 680-4J047858-21-42 for the period of 05/09/2021 to 05/09/2022 (the "2021 Phoenix CGL Policy") (a certified copy of the 2021 Phoenix CGL Policy is attached hereto as <u>Exhibit F</u>);

- Policy No. 680-2T602253-22-42 for the period of 05/09/2022 to 06/30/2022 (the "2022 Phoenix CGL Policy") (a certified copy of the 2022 Phoenix CGL Policy is attached hereto as <u>Exhibit G</u>);

- Policy No. H-630-5T637418-PHX-22 for the period of 06/30/2022 to 06/30/2023 (the "2022-2023 Phoenix CGL Policy") (a certified copy of the 2022-2023 Phoenix CGL Policy is attached hereto as <u>Exhibit H</u>); and

- Policy No. H-630-5T637418-PHX-23 for the period of 06/30/2023 to 06/30/2024 (the "2023-2024 Phoenix CGL Policy") (a certified copy of the 2023-2024 Phoenix CGL Policy is attached hereto as <u>Exhibit I</u>).

31.     The 2017 Phoenix CGL Policy, 2018 Phoenix CGL Policy, 2019 Phoenix CGL Policy, 2020 Phoenix CGL Policy, 2021 Phoenix CGL Policy, 2022 Phoenix CGL Policy, 2022-2023 Phoenix CGL Policy, and 2023-2024 Phoenix CGL Policy will be collectively referred to as the "Phoenix CGL Policies."

32.     Travelers Casualty issued to Togetherwork Holdings, LLC the following primary Office Pac policies containing commercial general liability coverage parts, which name

Ackercamps as an additional insured by endorsement, for the designated policy periods:

- Policy No. 680-4J049495-17-42 for the period of 05/09/2017 to 05/09/2018 (the "2017 Travelers Casualty CGL Policy");

- Policy No. 680-4J049495-18-42 for the period of 05/09/2018 to 05/09/2019 (the "2018 Travelers Casualty CGL Policy");

- Policy No. 680-4J049495-19-42 for the period of 05/09/2019 to 05/09/2020 (the "2019 Travelers Casualty CGL Policy");

- Policy No. 680-4J049495-20-42 for the period of 05/09/2020 to 05/09/2021 (the "2020 Travelers Casualty CGL Policy");

- Policy No. 680-4J049495-21-42 for the period of 05/09/2021 to 05/09/2022 (the "2021 Travelers Casualty CGL Policy"); and

- Policy No. 680-2T602308-22-42 for the period of 05/09/2022 to 06/30/2022 (the "2022 Travelers Casualty CGL Policy").

33.    The 2017 Travelers Casualty CGL Policy, 2018 Travelers Casualty CGL Policy, 2019 Travelers Casualty CGL Policy, 2020 Travelers Casualty CGL Policy, 2021 Travelers Casualty CGL Policy, and 2022 Travelers Casualty CGL Policy will be collectively referred to as the "Travelers Casualty CGL Policies." (Certified copies of the 2017-2020 Travelers Casualty CGL Policies are attached hereto as Exhibit J; a certified copy of the 2021 Travelers Casualty CGL Policy is attached hereto as Exhibit K; a certified copy of the 2022 Travelers Casualty CGL Policy is attached hereto as Exhibit L).

34.    The Phoenix CGL Policies and the Travelers Casualty CGL Policies will be collectively referred to as the "CGL Policies."

**Umbrella Policies**

35.    Travelers Indemnity issued to Togetherwork Holdings, LLC the following Commercial Excess Liability (Umbrella) Insurance policies, which name Ackercamps as an additional named insured by endorsement, for the designated policy periods:

- Policy No. CUP-4J050193-17-42 for the period of 05/09/2017 to 05/09/2018 (the "2017 Travelers Indemnity Umbrella Policy") (a certified copy of the 2017 Travelers Indemnity Umbrella Policy is attached hereto as <u>Exhibit M</u>); and

- Policy No. CUP-4J050193-18-42 for the period of 05/09/2018 to 05/09/2019 (the "2018 Travelers Indemnity Umbrella Policy") (a certified copy of the 2018 Travelers Indemnity Umbrella Policy is attached hereto as <u>Exhibit N</u>).

36.    The 2017 Travelers Indemnity Umbrella Policy and 2018 Travelers Indemnity Umbrella Policy will be collectively referred to as the "Travelers Indemnity Umbrella Policies."

37.    Travelers Property issued to Togetherwork Holdings, LLC the following Excess Follow-Form and Umbrella Liability Insurance policies, which name Ackercamps as an additional named insured by endorsement, for the designated policy periods:

- Policy No. CUP-4J050193-19-42 for the period of 05/09/2019 to 05/09/2020 (the "2019 Travelers Property Umbrella Policy") (a certified copy of the 2019 Travelers Property Umbrella Policy is attached hereto as <u>Exhibit O</u>);

- Policy No. CUP-4J050193-20-42 for the period of 05/09/2020 to 05/09/2021 (the "2020 Travelers Property Umbrella Policy") (a certified copy of the 2020 Travelers Property Umbrella Policy is attached hereto as <u>Exhibit P</u>);

- Policy No. CUP-4J050193-21-42 for the period of 05/09/2021 to 05/09/2022 (the "2021 Travelers Property Umbrella Policy") (a certified copy of the 2021 Travelers Property Umbrella Policy is attached hereto as <u>Exhibit Q</u>);

- Policy No. CUP-2T603575-22-42 for the period of 05/09/2022 to 06/30/2022 (the "2022 Travelers Property Umbrella Policy") (a certified copy of the 2022 Travelers Property Umbrella Policy is attached hereto as <u>Exhibit R</u>);

- Policy No. CUP-5T645154-22-I3 for the period of 06/30/2022 to 06/30/2023 (the "2022-2023 Travelers Property Umbrella Policy") (a certified copy of the 2022-2023 Travelers Property Umbrella Policy is attached hereto as <u>Exhibit S</u>); and

- Policy No. CUP-5T645154-23-I3 for the period of 06/30/2023 to 06/30/2024 (the "2023-2024 Travelers Property Umbrella Policy") (a certified copy of the 2023-2024 Travelers Property Umbrella Policy is attached hereto as <u>Exhibit T</u>).

38.    The 2019 Travelers Property Umbrella Policy, 2020 Travelers Property Umbrella Policy, 2021 Travelers Property Umbrella Policy, 2022 Travelers Property Umbrella Policy, 2022-

2023 Travelers Property Umbrella Policy, and 2023-2024 Travelers Property Umbrella Policy will be collectively referred to as the "Travelers Property Umbrella Policies."

39. The Travelers Indemnity Umbrella Policies and the Travelers Property Umbrella Policies will be collectively referred to as the "Umbrella Policies."

**The Terms, Conditions, and Exclusions in the CGL Policies**

40. The CGL Policies provide Coverage A, Bodily Injury and Property Damage Liability, coverage and Coverage B, Personal and Advertising Injury Liability, coverage, and such coverages are subject to the terms, conditions, and exclusions stated in the CGL Policies.

41. The 2017 and 2018 CGL Policies are subject to the same insuring agreement applicable to Coverage A, Bodily Injury and Property Damage Liability, as follows:

> **1.    Insuring Agreement**
>
> **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …
>
> **b.**    This insurance applies to "bodily injury" and "property damage" only if:
>
> > **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> >
> > **(2)**    The "bodily injury" or "property damage" occurs during the policy period. …

(Ex. B, p. 101; Ex. C, p. 285; Ex. J, p. 286).

42. The 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 CGL Policies are subject to the same insuring agreement applicable to Coverage A, Bodily Injury and Property Damage Liability (which is materially the same as the insuring agreement of the 2017 and 2018 CGL

Policies for purposes of this coverage action and the Vahle Lawsuit), as follows:

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period. …

(Ex. D, p. 55; Ex. E, p. 121; Ex. F, p. 336; Ex. G, p. 108; Ex. H, p. 114, Ex. I, p. 120; Ex. J, p. 82; Ex. K, p. 85; Ex. L, p. 87).

43.     The 2017 and 2018 CGL Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Ex. B, p. 112; Ex. C, p. 296; Ex. J, p. 297).

44.     The 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 CGL Policies define "bodily injury" as "a. Physical harm, including sickness or disease, sustained by a person; or b. Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease." (Ex. D, p. 71; Ex. E, p. 137; Ex. F, p. 352; Ex. G, p. 124; Ex. H, p. 130; Ex. I, p. 136; Ex. J, p. 98; Ex. K, p. 101; Ex. L, p. 103).

45.     The CGL Policies all define "property damage" as "a. Physical injury to tangible property, including all resulting loss of use of that property. … b. Loss of use of tangible property that is not physically injured. …" (Ex. B, p. 133; Ex. C, p. 317; Ex. D, p. 74; Ex. E, p. 140; Ex. F,

p. 355; Ex. G, p. 127; Ex. H, p. 133; Ex. I, p. 139; Ex. J, p. 101, 300; Ex. K, p. 104; Ex. L, p. 106).

46.     The CGL Policies all define "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. B, p. 114; Ex. C, p. 298; Ex. D, p. 73; Ex. E, p. 139; Ex. F, p. 354; Ex. G, p. 126; Ex. H, p. 132; Ex. I, p. 138; Ex. J, p. 100, 299; Ex. K, p. 103; Ex. L, p. 105).

47.     The CGL Policies are all subject to the same insuring agreement applicable to Coverage B, Personal and Advertising Injury Liability, as follows:

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. …

**b.**     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period. …

(Ex. B, p. 105; Ex. C, p. 289; Ex. D, p. 60; Ex. E, p. 126; Ex. F, p. 341; Ex. G, p. 113; Ex. H, p. 119; Ex. I, p. 125; Ex. J, p. 87, 290; Ex. K, p. 90; Ex. L, p. 92).

48.     The CGL Policies all define "personal and advertising injury" to mean "personal injury" or "advertising injury." (Ex. B, p. 119; Ex. C, p. 303; Ex. D, p. 73; Ex. E, p. 139; Ex. F, p. 354; Ex. G, p. 127; Ex. H, p. 132; Ex. I, p. 138; Ex. J, p. 100, 299; Ex. K, p. 103; Ex. L, p. 105).

49.     The 2017, 2018, 2019, 2020, 2021, 2022, and 2022-2023 CGL Policies define "personal injury" as follows:

"Personal injury":

**a.**  Means injury, other than "advertising injury", caused by one or more of the

12

following offenses:

    **(1)**    False arrest, detention or imprisonment;

    **(2)**    Malicious prosecution;

    **(3)**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

    **(4)**    Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

    **(5)**    Oral or written publication, including publication by electronic means, of material that:

        **(a)**    Appropriates a person's name, voice, photograph or likeness; or

        **(b)**    Unreasonably places a person a false light.

    **b.**    Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

(Ex. B, p. 121-22; Ex. C, p. 305-06; Ex. D, p. 73; Ex. E, p. 139; Ex. F, p. 354; Ex. G, p. 126; Ex. H, p. 132; Ex. J, p. 100, 304; Ex. K, p. 103; Ex. L, p. 105).

    50.    The 2023-2024 CGL Policy defines "personal injury" as follows:

"Personal injury":

    **a.**    Means injury caused by one or more of the following offenses:

    **(1)**    False arrest, detention or imprisonment;

    **(2)**    Malicious prosecution; or

    **(3)**    The wrongful eviction from, wrongful entry into, or invasion of the

right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises.

**b.**     Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

(Ex. I, p. 138).

51.     The 2017 and 2018 CGL Policies define "advertising injury" as follows:

"Advertising injury":

**a.**     Means injury, other than "personal injury", caused by one or more of the following offenses:

**(1)**     Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

**(2)**     Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

**(a)**     Appropriates a person's name, voice, photograph or likeness; or

**(b)**     Unreasonably places a person a false light; or

**(3)**     Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.**     Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

(Ex. B, p. 121; Ex. C, p. 305; Ex. J, p. 306).

52.     The 2019, 2020, 2021, 2022, and 2022-2023 CGL Policies define "advertising

injury" as follows (which is materially the same as the definition of "advertising injury" contained in the 2017 and 2018 CGL Policies for purposes of this coverage action and the Vahle Litigation):

"Advertising injury":

**a.**     Means injury caused by one or more of the following offenses:

**(1)**     Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

**(2)**     Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

**(a)**     Appropriates a person's name, voice, photograph or likeness; or

**(b)**     Unreasonably places a person a false light; or

**(3)**     Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.**     Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

(Ex. D, p. 71; Ex. E, p. 137; Ex. F, p. 352; Ex. G, p. 124; Ex. H, p. 130; Ex. J, p. 98; Ex. K, p. 101; Ex. L, p. 103).

53.     The 2023-2024 CGL Policy defines "advertising injury" as follows:

"Advertising injury":

**a.**     Means injury caused by the infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.**     Includes "bodily injury" caused by the offense described in Paragraph **a.**

15

above.

(Ex. I, p. 136).

54.    The CGL Policies all contain exclusion a. Knowing Violation Of Rights Of Another, which states as follows:

[This insurance does not apply to:]

**a.  Knowing Violation Of Rights Of Another**

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

(Ex. B, p. 105; Ex. C, p. 289; Ex. D, p. 60; Ex. E, p. 126; Ex. F, p. 341; Ex. G, p. 113; Ex. H, p. 119; Ex. I, p. 125; Ex. J, p. 87, 290; Ex. K, p. 90; Ex. L, p. 92).

55.    The CGL Policies all contain the Access Or Disclosure Of Confidential Or Personal Information exclusion. The 2017 and 2018 CGL Policies add the Access Or Disclosure Of Confidential Or Personal Information Exclusion by endorsement, which states as follows:

[This insurance does not apply to:]

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal injury" or "advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(Ex. B, p. 119; Ex. C, p. 303; Ex. J, p. 304).

56.    The Access Or Disclosure Of Confidential Or Personal Information Exclusion in the 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 CGL Policies states as follows:

[This insurance does not apply to:]

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(Ex. D, p. 62; Ex. E, p. 128; Ex. F, p. 343; Ex. G, p. 115; Ex. H, p. 121; Ex. I, p. 127; Ex. J, p. 89;

Ex. K, p. 92; Ex. L, p. 94).

57.     The 2017 and 2018 CGL Policies contain the Exclusion – Access Or Disclosure Of

Confidential Or Personal Information endorsement, which states as follows:

> The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I –
> COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY
> DAMAGE LIABILITY**:
>
> **Access Or Disclosure Of Confidential Or Personal Information**
>
> "Bodily injury" or "property damage" arising out of any access to or disclosure of
> any person's or organization's confidential or personal information.

(Ex. B, p. 141; Ex. C, p. 325; Ex. J, p. 324).

58.     The 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 CGL Policies contain the

Access Or Disclosure Of Confidential Or Personal Information exclusion, which states as follows:

> [This insurance does not apply to:]
>
> **Access Or Disclosure Of Confidential Or Personal Information**
>
> "Bodily injury" or "property damage" arising out of any access to or disclosure of
> any person's or organization's confidential or personal information.

(Ex. D, p. 59; Ex. E, p. 125; Ex. F, p. 340; Ex. G, p. 112; Ex. H, p. 118; Ex. I, p. 124; Ex. J, p. 86;

Ex. K, p. 89; Ex. L, p. 91).

59.     The CGL Policies all contain the Amendment – Non Cumulation Of Each

Occurrence Limit Of Liability and Non Cumulation Of Personal and Advertising Injury Limit

endorsement, which states as follows:

> **1.** Paragraph 5 of SECTION III – LIMITS OF INSURANCE, is amended to
>       include the following:
>
> Non cumulation of Each Occurrence Limit – If one "occurrence" causes "bodily
> injury" and/or "property damage" during the policy period and during the policy
> period of one or more prior and/or future policies that include a commercial

17

general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

**2.** Paragraph 4 of SECTION III – LIMITS OF INSURANCE, is amended to include the following:

Non cumulation of Personal and Advertising Limit – If "personal injury" and/or "advertising injury" is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liablity coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Personal Injury and Advertising Injury Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "personal injury" and/or "advertising injury".

(Ex. B, p. 131; Ex. C, p. 315; Ex. D, p. 439; Ex. E, p. 145; Ex. F, p. 360; Ex. G, p. 132; Ex. H, p. 137; Ex. I, p. 143; Ex. J, p. 314; Ex. K, p. 108; Ex. L, p. 111).

60.     The 2017, 2018, 2019, 2020, 2021, and 2022 CGL Policies contain the Limitation When Two Or More Policies Apply endorsement, which states as follows:

**Provisions**

**1.** Injury, damage or loss might be covered by this policy and also by other policies issued to you by us or any Travelers affiliate. When these other policies contain a provision similar to this one, the amount we will pay is limited. The maximum that we will pay under all such policies combined is the highest limit that applies in any one of these policies.

**2.** This does not apply to any personal liability policy or to any Umbrella, Excess or Protective Liability Policy.

(Ex. B, p. 165; Ex. C, p. 349; Ex. D, p. 47; Ex. E, p. 171; Ex. F, p. 386; Ex. G, p. 164; Ex. J, p. 343; Ex. K, p. 130; Ex. L, p. 137).

## The Terms, Conditions, and Exclusions in the Umbrella Policies

61.     The Umbrella Policies apply in excess of the respective CGL Policies and provide

only "bodily injury," "property damage," "personal injury," or "advertising injury" liability coverage, and such coverage is limited to the terms, conditions, and exclusions stated in the Umbrella Policies.

62.   The 2017 and 2018 Umbrella Policies are subject to the same insuring agreement, as follows:

**1.    INSURING AGREEMENT.**

  **a.**   We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

  This insurance applies to "bodily injury" or "property damage" only if:

  **(i)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;

  **(ii)**   The "bodily injury" or "property damage" occurs during the policy period. …

  This insurance applies to "personal injury" or "advertising injury" caused by an "offense" committed during the policy period, anywhere in the world.…

(Ex. M, p. 9; Ex. N, 9).

63.   The 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 Umbrella Policies are subject to the same insuring agreement applicable to Coverage A, Excess Follow-Form Liability, as follows:

**A.    COVERAGE A – EXCESS FOLLOW-FORM LIABILITY**

  **1.**   We will pay on behalf of the insured those sums, in excess of the "applicable underlying limit", that the insured becomes legally obligated to pay as damages to which Coverage A of this insurance applies, provided that the "underlying insurance" would apply to such damages but for the exhaustion of its applicable limits of insurance. …

19

> **2.**    Coverage A of this insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except with respect to any provisions to the contrary contained in this insurance.

(Ex. O, p. 13; Ex. P, p. 9; Ex. Q, p. 10; Ex. R, p. 9; Ex. S, p. 10; Ex. T, p. 10).

64.    The 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 Umbrella Policies are subject to the same insuring agreement, applicable to Coverage B – Umbrella Liability, as follows:

**A.    COVERAGE B – UMBRELLA LIABILITY**

> **1.**    We will pay on behalf of the insured those sums in excess of the "self-insured retention" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which Coverage B of this insurance applies.

> **2.**    Coverage B of this insurance applies to "bodily injury" or "property damage" only if:

>> **a.**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;

>> **b.**    The "bodily injury" or "property damage" occurs during the policy period[.]

(Ex. O, p. 14; Ex. P, p. 10; Ex. Q, p. 11; Ex. R, p. 10; Ex. S, p. 11; Ex. T, p. 11).

65.    The 2017 and 2018 Umbrella Policies define "applicable underlying limit" as follows:

"Applicable underlying limit" means:

> **a.**    If the policies of "underlying insurance" apply to the "occurrence" or "offense", the greater of:

>> **(1)**    The amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims.…

> **b.**    If the policies of "underlying insurance" do not apply to the "occurrence"

or "offense", the amount stated in the Declarations as the "related limit".

(Ex. M, p. 19; Ex. N, 19).

66.     The 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 Umbrella Policies define "applicable underlying limit" as follows:

"Applicable underlying limit" means the sum of:

**a.**  The applicable limit of insurance stated for the policies of "underlying insurance" in the Schedule Of Underlying Insurance subject to the provisions in Paragraphs **4.a.(1)**, **(2)**, and **(3)** of **COVERAGE A – EXCESS FOLLOW FORM LIABILITY** of **SECTION I – COVERAGES**; and

**b.**  The applicable limit of insurance of any "other insurance" that applies.

(Ex. O, p. 28; Ex. P, p. 24; Ex. Q, p. 25; Ex. R, p. 24; Ex. S, p. 25; Ex. T, p. 25).

67.     The 2017 and 2018 Umbrella Policies define "bodily injury" as "bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time." (Ex. M, p. 19; Ex. N, 19).

68.     The 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 Umbrella Policies define "bodily injury" the same or substantially the same as that term is defined in the 2019, 2020, and 2021 CGL Policies. (Ex. O, p. 30; Ex. P, p. 26; Ex. Q, p. 27; Ex. R, p. 26; Ex. S, p. 27; Ex. T, p. 27).

69.     The Umbrella Policies all define "property damage" the same or substantially the same as that term is defined in the CGL Policies. (Ex. M, p. 51; Ex. N, 51; Ex. O, p. 32; Ex. P, p. 28; Ex. Q, p. 29; Ex. R, p. 28; Ex. S, p. 29; Ex. T, p. 29).

70.     The 2017 and 2018 Umbrella Policies define "occurrence" the same or substantially the same as that term is defined in the 2017 and 2018 CGL Policies. (Ex. M, p. 19; Ex. N, 19).

71.     With respect to "bodily injury" or "property damage", the 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 Umbrella Policies define "occurrence" as an "accident, including

continuous or repeated exposure to substantially the same general harmful conditions, which results in 'bodily injury' or 'property damage.'" (Ex. O, p. 32; Ex. P, p. 27; Ex. Q, p. 28; Ex. R, p. 27; Ex. S, p. 28; Ex. T, p. 28).

72.    With respect to "personal injury", the 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 Umbrella Policies define "occurrence" as an "offense arising out of your business that results in 'personal injury. ...'" (Ex. O, p. 32; Ex. P, p. 28; Ex. Q, p. 29; Ex. R, p. 28; Ex. S, p. 29; Ex. T, p. 29).

73.    With respect "advertising injury", the 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 Umbrella Policies define "occurrence" as an "offense committed in the course of advertising your goods, products and services that results in 'advertising injury. ...'" (Ex. O, p. 32; Ex. P, p. 28; Ex. Q, p. 29; Ex. R, p. 28; Ex. S, p. 29; Ex. T, p. 29).

74.    The Umbrella Policies all define "personal injury" the same or substantially the same as that term is defined in the 2017, 2018, 2019, 2020, 2021, 2022, and 2022-2023 CGL Policies. (Ex. M, p. 27-28; Ex. N, 27-28; Ex. O, p. 32; Ex. P, p. 28; Ex. Q, p. 29; Ex. R, p. 28; Ex. S, p. 29; Ex. T, p. 29).

75.    The Umbrella Policies all define "advertising injury" the same or substantially the same as that term is defined in the 2017 and 2018 CGL Policies. (Ex. M, p. 27; Ex. N, 27; Ex. O, p. 30; Ex. P, p. 25-26; Ex. Q, p. 26-27; Ex. R, p. 25-26; Ex. S, p. 26-27; Ex. T, p.26-27).

76.    The Umbrella Policies all contain the same or substantially the same Knowing Violation Of Rights Of Another exclusion as contained in the CGL Policies. (Ex. M, p. 12; Ex. N, 12; Ex. O, p. 23; Ex. P, p. 18; Ex. Q, p. 19; Ex. R, p. 18; Ex. S, p. 19; Ex. T, p. 19).

77.    The 2017 and 2018 Umbrella Policies contain the same or substantially the same Access Or Dislcosure Of Confidential Or Personal Information exclusion as contained in the 2017

and 2018 CGL Policies. The 2017 and 2018 Umbrella Policies add the Access Or Disclosure Of Confidential Or Personal Information Exclusion by endorsement. (Ex. M, p. 27; Ex. N, 27).

78.     The 2017 and 2018 Umbrella Policies contain the same or substantially the same Exclusion – Access Or Disclosure Of Confidential Or Personal Information endorsement as contained in the 2017 and 2018 CGL Policies. (Ex. M, p. 48; Ex. N, 48).

79.     The 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 Umbrella Policies all contain the Access Or Disclosure Of Confidential Or Personal Information exclusion, which states as follows:

[This insurance does not apply to:]

**Access Or Disclosure Of Confidential Or Personal Information**

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(Ex. O, p. 22; Ex. P, p. 18; Ex. Q, p. 19; Ex. R, p. 18; Ex. S, p. 19; Ex. T, p. 19).

80.     The 2023-2024 Umbrella Policy contains the Personal Injury Exclusion – Coverage B, which states:

The following exclusion is added to Paragraph **B.** of **SECTION IV – EXCLUSIONS**:

"**Personal injury**".

(Ex. T, p. 41).

81.     The 2023-2024 Umbrella Policy contains the Advertising Injury Exclusion – Coverage B, which states:

The following exclusion is added to Paragraph **B.** of **SECTION IV – EXCLUSIONS**:

**Advertising Injury**

"Advertising injury".

23

(Ex. T, p. 38).

**Ackercamps' Tender to Travelers and Travelers' Denial of Coverage**

82.     Ackercamps provided its first notice of the Vahle Lawsuit to Travelers on October 12, 2022.

83.     On or about December 9, 2022, Travelers denied any duty to defend or indemnify Ackercamps with respect to the Vahle Lawsuit.

84.     On or about January 23, 2023, Ackercamps, via counsel, requested Travelers to reconsider its denial of coverage.

85.     On or about February 8, 2023, Ackercamps informed Travelers of a potential settlement in the Vahle Lawsuit.

86.     On or about February 28, 2023, Travelers advised that it had reviewed counsel's letter and reviewed its own coverage analysis and that it was maintaining its denial of coverage.

87.     On or about February 28, 2023, Ackercamps responded, via counsel, stating that Ackercamps planned to accept a settlement demand for the Vahle Lawsuit and asking Travelers again to consider participating in settlement.

88.     On or about March 8, 2023, Travelers again responded that it was maintaining its denial of coverage.

89.     On or about August 15, 2023, having heard nothing further about a settlement, Travelers investigated and learned that the Vahle Lawsuit had been dismissed without prejudice.

90.     On or about August 24, 2023, Ackercamps advised that the parties had tentatively agreed to a settlement of the Vahle Lawsuit; advised that the Vahle Lawsuit had been dismissed and remanded to state court for settlement approval; provided a copy of a draft settlement agreement; and requested Travelers to fund the settlement.

**COUNT I**
**DECLARATORY JUDGMENT**
**NO COVERAGE FOR THE VAHLE LAWSUIT UNDER THE CGL POLICIES**

91.    Travelers hereby incorporates and realleges the allegations in Paragraphs 1-90 as if fully set forth herein.

92.    The Vahle Lawsuit seeks recovery pursuant to the alleged violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* (BIPA).

93.    No coverage is available under the CGL Policies to Ackercamps with respect to the relief sought in the Vahle Lawsuit, and Travelers therefore has no duty to defend or indemnify Ackercamps with respect to the Vahle Lawsuit.

94.    Ackercamps disputes Travelers' denial of coverage under the CGL Policies with respect to the Vahle Lawsuit.

95.    Accordingly, and pursuant to 28 U.S.C § 2201, Travelers seeks this Court to declare the following:

a.    Travelers owes no duty to defend Ackercamps under the CGL Policies with respect to the relief sought in the Vahle Lawsuit and therefore has no obligation to reimburse or pay Ackercamps any amount of fees or expenses Ackercamps has incurred or may continue to incur in defense of the Vahle Lawsuit; and

b.    Travelers owes no duty to indemnify Ackercamps under the CGL Policies with respect to the relief sought in the Vahle Lawsuit and therefore has no obligation to pay all or part of any settlement or judgment with respect thereto.

**COUNT II**
**DECLARATORY JUDGMENT**
**NO COVERAGE FOR THE VAHLE LAWSUIT UNDER THE UMBRELLA POLICIES**

96.    Travelers hereby incorporates and realleges the allegations in Paragraphs 1-95 as if

fully set forth herein.

97.     The Vahle Lawsuit seeks relief pursuant to the alleged violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* (BIPA).

98.     No coverage is available under the Umbrella Policies to Ackercamps with respect to the relief sought in the Vahle Lawsuit, and Travelers therefore has no duty to defend or indemnify Ackercamps with respect to the Vahle Lawsuit.

99.     Ackercamps disputes Travelers' denial of coverage under the Umbrella Policies with respect to the Vahle Lawsuit.

100.    Accordingly, and pursuant to 28 U.S.C § 2201, Travelers seeks this Court to declare the following:

a.      Travelers owes no duty to defend Ackercamps under the Umbrella Policies with respect to the relief sought in the Vahle Lawsuit and therefore has no obligation to reimburse or pay Ackercamps any amount of fees or expenses Ackercamps has incurred or may continue to incur in defense of the Vahle Lawsuit; and

b.      Travelers owes no duty to indemnify Ackercamps under the Umbrella Policies with respect to the relief sought in the Vahle Lawsuit and therefore has no obligation to pay all or part of any settlement or judgment with respect thereto.

WHEREFORE, Travelers requests that this Court enter a judgment and order as follows:

A.      As to Count I, finding and declaring that Travelers has no duty to defend or indemnify Ackercamps under the CGL Policies with respect to the relief sought in the Vahle Lawsuit;

B.      As to Count II, finding and declaring that Travelers has no duty to defend or indemnify Ackercamps under the Umbrella Policies with respect to the relief sought in the Vahle Lawsuit; and

C.     Granting such other and appropriate relief as this Court deems just and proper.

Dated: October 6, 2023             Respectfully submitted,

By: */s/Rebecca C. Dunn*

      Michael M. Marick (mmarick@skarzynski.com)
      Karen M. Dixon (kdixon@skarzynski.com)
      Rebecca C. Dunn (rdunn@skarzynski.com)
      SKARZYNSKI MARICK & BLACK LLP
      353 N. Clark St., Suite 3650
      Chicago, IL  60654
      Tel: (312) 946-4200
      Fax: (312) 946-4272

      *Attorneys for Plaintiffs, The Phoenix Insurance*
      *Company, Travelers Casualty Insurance Company*
      *of America, The Travelers Indemnity Company, and*
      *Travelers Property Casualty Company of America*