IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, THE TRAVELERS INDEMNITY COMPANY, and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>      **Plaintiffs,**<br><br>  v.<br><br>ACKERCAMPS.COM LLC, K.V., a minor, by and through her Guardian, LYNAE VAHLE, and LYNAE VAHLE, individually and on behalf of all others similarly situated,<br><br>      **Defendants.** | Case No. 3:23-cv-3303-DWD |

**ORDER REGARDING THE PROTOCOL FOR PRODUCTION OF
ELECTRONICALLY STORED INFORMATION AND HARD-COPY DOCUMENTS**

This matter having come before the Court on agreement of the parties, and this Court having concluded, pursuant to Federal Rule of Civil Procedure 34, that this action is likely to involve the production of Electronically Stored Information ("ESI") and, as such, this protocol (the "Protocol") should be developed to govern the search, processing, and production of said ESI and Hard-Copy Documents during the pendency of the above-captioned litigation (the "Litigation"),

IT IS HEREBY ORDERED:

## DEFINITIONS

1. "<u>Electronically Stored Information</u>" or "<u>ESI</u>" carries its broadest possible meaning consistent with Federal Rule of Civil Procedure 34.

2. "<u>Plaintiffs</u>" means The Phoenix Insurance Company, Travelers Casualty Insurance Company of America, The Travelers Indemnity Company, and Travelers Property Casualty Company of America (collectively, "Travelers").

3. "<u>Defendant</u>" means Ackercamps.com LLC ("Ackercamps").

4. "<u>Document</u>" carries its broadest possible meaning consistent with Federal Rule of Civil Procedure 34(a)(1) and includes both ESI and Hard Copy Discovery.

5. "<u>Discovery Material</u>" means any information; document; electronically stored information, such as matter stored or recorded in the form of electronic or magnetic media (including information, files, databases, or programs stored on any digital or analog machine- readable device, computers, Internet sites, discs, networks, or tapes); or tangible thing, including, but not limited to, all copies, excerpts, summaries, or compilations thereof, whether revealed in a document, deposition, other testimony, discovery response, or otherwise, that is produced, adduced, delivered, or disclosed in or pursuant to the Litigation.

6. "<u>Confidentiality Designation</u>" means the "Confidential" legend affixed to Documents, as defined by, and subject to, the terms of the Stipulated Protective Order entered in this matter.

7. "<u>Format</u>" means the internal structure of a file, which defines the way it is stored and used.

8. "Hard-Copy Document" means any Document that is not in electronic form, including Documents existing in paper form at the time of collection.

9. "Native File(s)" or "Native Format" means ESI that is a file or datum created by a computer-based, cloud-based, or artificial intelligence-based application (including, by way of example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.pst, and *.pdf files).

10. "Preservation" or "Preserved" shall mean taking reasonable steps to prevent the partial or full destruction, alteration, shredding, incineration, wiping or loss, due to any reason whatsoever, of information, including ESI and hard copy documents.

11. "Producing Party" means a party to this Litigation or any third party that produces or otherwise makes available Discovery Material in this Litigation.

12. "Receiving Party" means a party to this Litigation or any third party that receives Discovery Material from a Producing Party.

13. "Metadata" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

14. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper documents.

15. "Structured Data" means data that has been organized into a tabular format with relationships between the different rows and columns, including, but not limited to, Excel spreadsheets, SQL databases, and other relational databases.

16. "Include" and "Including" shall be construed to mean "include but not be limited to" and "including, but not limited to".

17. "All" and "Each" shall both be construed as all and as each.

## SCOPE OF ORDER

18. This Order shall govern the search for, processing of, and production of ESI and of Hard-Copy Documents after the execution of this Protocol. The Parties agree to meet and confer regarding the applicability of this ESI Protocol to any productions made prior to its execution.

19. Nothing in this Order is intended to expand the Parties' obligations, or limit their rights, under the Federal Rules of Civil Procedure, Court Rules for the U.S. District Court for the Southern District of Illinois (the "Local Rules"), as well as any other applicable rules of this Court. To the extent any disputes arise related to the production of ESI, and those disputes are not addressed by any of the agreements made herein, they shall be resolved according to the Federal Rules of Civil Procedure, Court Rules for the U.S. District Court for the Southern District of Illinois (the "Local Rules"), as well as any other applicable rules of this Court, and other applicable orders, laws, and rules.

20. The Parties and their attorneys do not intend, by this Protocol, to waive their rights to the attorney work-product doctrine. The Parties preserve their attorney-client privileges and other privileges, all of which are preserved and protected to the

fullest extent provided by law, and there is no intent by this Protocol, or the production of documents pursuant to this Protocol, to in any way waive or weaken these privileges. Documents produced hereunder are fully protected and covered by any protective order entered by this Court and orders of the Court effectuating same.

21. The Parties do not waive any objections to the discoverability, admissibility, or confidentiality of documents or ESI. Nothing in this Order shall be interpreted to supersede the provisions of any protective order governing confidentiality and/or privilege entered by the Court in this litigation, unless expressly provided for in such an order.

22. The Parties shall comply with this ESI Protocol to the extent reasonably feasible. A Party is not required to comply with any aspect of this Protocol that is impossible, unreasonable, or infeasible provided that it informs the other Parties in writing at or before the time of production as to why compliance with the Protocol is impossible, unreasonable or infeasible. In such instance, the parties will meet and confer in good faith on reasonably feasible alternatives.

## ESI – FORMAT

23. <u>Parent-Child Relationships</u>.  Parent-Child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) will be preserved through the production of an appropriate metadata field. Parent-Child relationships shall also be preserved by assigning sequential Bates numbers to all items within the Parent-Child group, where reasonably feasible.

24. All spreadsheet (*e.g.*, Excel), database, audio, and video files shall be produced in the unprocessed "as kept in the ordinary course of business" state (*i.e.*, in Native Format), with an associated placeholder image and endorsed with a unique Bates Number, as described in Paragraph 38 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. To the extent a Party believes that specific documents or classes of documents, not already identified within this Protocol, should be produced in Native Format, the Parties agree to meet and confer in good faith.

25. Duplicates. ESI may be deduplicated globally following industry-standard global deduplication algorithms. An acceptable method, such as the MD5, SHA-1, or SHA-256 hash format, shall be used for any deduplication. All custodians who had a copy prior to deduplication, such as email recipients, CCs, or BCCs, will be populated in an ALL CUSTODIANS metadata field. ESI duplicates shall be removed from all ESI productions in a manner that does not break up document families, *i.e.*, emails shall be treated as duplicates only if they are identical both in their bodies and in all their attachments. If email attachments are deemed duplicates, but the documents to which they are attached are not, neither they nor the documents to which they were attached shall be deduplicated. Similarly, email attachments that are deemed duplicates of non-email documents also shall not be deduplicated. Any duplicate ESI that is not produced shall be preserved.

26. Bates Numbering. Each TIFF/JPEG image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document

production; (2) maintain a constant length of eight numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters; and (4) be sequential within a given Document. The Producing Party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a Producing Party intentionally skips a Bates number or set of Bates numbers in a production, the Producing Party will identify and note the gap in the cover letter or production log accompanying the production.

27. <u>Production Media</u>.  A Producing Party shall produce the responsive Documents in an encrypted electronic form via Secure File Transfer or on a CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Information that shall be identified on the physical Production Media shall include: (1) a reference to this case number, (2) the Producing Party's name, and (3) the production date. The Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, and where not practicable to do so may be provided in an accompanying letter.

28. <u>Other ESI that is Impractical to Produce in Traditional Formats (also known as Structured Data)</u>.  The parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or other traditional formats. To the extent a response to discovery requires production of ESI contained in a database, the parties agree to confer to define appropriate parameters

for querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (*e.g.*, Excel, CSV or SQL format).

29. <u>Production of Other Electronic Documents</u>.  The parties shall meet and confer to agree on the form of any production of electronic documents not addressed in this Protocol.

## PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

30. The Documents should be logically unitized (*i.e.*, distinct Documents shall not be merged into a single record, and single Documents shall not be split into multiple records, if possible) and be produced in the order in which they are kept in the usual course of business. If a folder with Hard-Copy Documents is produced, the label of that folder, if any, shall be scanned and produced along with the Documents in the folder. The foldering relationship among the documents in the folder should be produced, either by use of a Parent-Child relationship or otherwise. If any original Hard-Copy Document has attachments, the parties will scan and produce copies of the attachments in the same manner as other Documents. If any original Hard-Copy Document has notes affixed thereto, the parties will scan the page(s) of the original Hard-Copy Document containing the notes both with the notes attached and with the notes removed, and produce copies of both versions unitized together but otherwise in the same manner as other Documents.

31. Hard-Copy Documents containing color need not be produced in color in the first instance. The Receiving Party may make a reasonable request for the production of specific documents in color, by providing: (i) a list of the Bates numbers of documents it requests to be produced in color format; and (ii) an explanation of the need for

8

production in color format. The Producing Party shall not unreasonably deny such requests.

## **PRIVILEGE LOGS**

32.     Within thirty (30) days of the completion of document production, the Producing Party shall serve upon the Receiving Party a privilege log identifying each responsive document withheld from production on the ground that the document is privileged or otherwise protected from production. After the substantial completion of document discovery, any supplement of the privilege log shall be completed within fourteen (14) days of the relevant production, where reasonably feasible.

33.     The Producing Party shall identify each such Document by Bates number and shall provide the following information with respect to each such Document: (a) the identity of each author(s) and their title(s) or position(s); (b) all persons to whom it was sent and their title(s); (c) the date of the document; (d) a description ("Document Description") of the general type and subject matter of the document (which shall not constitute a waiver of the privilege) so that the Receiving Party can evaluate the asserted basis for withholding the document; and (e) the legal basis for withholding document.

34.     The same Document Description may be used for multiple Documents (*i.e.*, a categorical description) so long as the Producing Party has, in good faith, evaluated the Document to ensure the Document Description accurately reflects the contents of the Document and is sufficient for the Receiving Party to fairly evaluate the claim of privilege or immunity.

35. A single Document containing multiple e-mails in an e-mail chain may be logged as a single entry; however, upon reasonable request for specific documents, the Producing Party shall provide information identifying each e-mail in the chain separately. A Document family (*e.g.*, e-mail and attachments) may be logged as a single entry so long as the log entry references the attachment(s) and accurately describes both the e-mail and its responsive attachment(s).

36. If any member of a family group is produced, all members of that group must also be produced, logged as privileged, or slip-sheeted as non-responsive, and no such member shall be withheld from production as a duplicate.

37. Notwithstanding the foregoing, the Parties shall not be required to log any documents or communications exchanged with, created, generated, or written by or at the direction of their in-house or outside counsel, or exchanged among counsel who are parties to a joint defense agreement, on or after October 6, 2023. For the avoidance of doubt, nothing in this Order limits or waives Travelers' rights to the disclosure of documents and communications contemplated in *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 579 N.E.2d 322 (1991).

38. Pursuant to the Protective Order, the production of a privileged or work-product-protected Document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other state or federal proceeding. For example, the mere production of privileged or work-product-protected Documents in this case as part of a mass production is not itself a waiver in this case or in any other state or federal proceeding.

39.     The Parties recognize that portions of a privilege log may be automatically generated from ESI.  Nothing herein obviates a Party's responsibility to conduct a reasonable review for accuracy of privilege logs created from ESI.

40.     The Parties agree that, if the information in Paragraph 33 would, with respect to a logged Document, reveal privileged information, the information need not be included in the log.  The Parties further agree that when the foregoing information is not adequately contained in Metadata, the privileged information will nonetheless be logged to the best of counsel's ability in a manual manner.  The Parties shall identify which individuals on the privilege log are attorneys.  The Parties must also identify on their log or in a corresponding Document the affiliation of any third parties appearing on their privilege log.

41.     In the event that a Producing Party redacts a portion of a Document, the Producing Party must identify the basis for the redaction in the Producing Party's privilege log.  The receiving Party has a right to object to the asserted basis for redaction. If the receiving Party finds a Document to be incomprehensible or unintelligible because of a redaction, the Parties will meet and confer to try in good faith to resolve the dispute.

42.     The inadvertent failure to log privileged Documents will not result in the waiver of privilege, provided that upon discovering the inadvertent omission, the Producing Party provides notice to the Requesting Party of the inadvertent failure to log within fourteen (14) days of discovering the inadvertent omission, and within a reasonable time thereafter sends the Requesting Party an addendum to the appropriate privilege log providing the required privilege log entries for the Document(s).

## GENERAL PROVISIONS

43. In the event any Document (or portion thereof) produced is password-protected, the Producing Party shall inform the receiving Party and shall make all reasonable efforts to provide the password needed to access the Document.

44. Each page of any Document designated as Confidential pursuant to the Stipulated Protective Order shall be stamped or otherwise affixed with the legend "CONFIDENTIAL."

45. The costs of production shall generally be borne by the Producing Party. However, in agreeing to this Protocol, no Party waives or relinquishes any right or interest it may have under the applicable rules to seek cost shifting or apportionment for the costs of electronic discovery in instances where the materials sought are not reasonably available and/or their production would involve extraordinary effort or resources, to seek costs of suit as a prevailing party at the conclusion of this Litigation, or to seek costs as sanction in a discovery or other motion.

46. Pursuant to Local Rule 26.1(c), the parties will meet and confer to resolve any dispute regarding the application of this Protocol before seeking Court intervention.

47. This Order may be modified by a stipulated order filed by the parties or, for good cause, by the Court.

**SO ORDERED.**

Dated: June 25, 2024               /s *David W. Dugan*
                                   _____
                                   DAVID W. DUGAN
                                   United States District Judge