# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, THE TRAVELERS INDEMNITY COMPANY, and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Plaintiffs, <br><br> vs. <br><br> ACKERCAMPS.COM LLC, K.V., a minor, by and through her Guardian, LYNAE VAHLE, and LYNAE VAHLE, individually and on behalf of all others similarly situated, <br><br> Defendants. | Case No. 3:23-cv-3303-DWD |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

This is an action for a declaratory judgment regarding an insurance coverage dispute over Plaintiffs' duty to defend and, ultimately, duty to indemnify. The parties have each filed their Motions for Summary Judgement. (Docs. 48 and 64).[1]

### I. BACKGROUND

According to Travelers, Ackercamps.com LLC ("Ackercamps"), partnered with summer camps in Illinois to provide consumers with access to online photo galleries

---

[1] Throughout this Memorandum and Order, reference to "Travelers" shall collectively include The Phoenix Insurance Company, Travelers Casualty, Travelers Indemnity, and Travelers Property unless otherwise noted.

1

equipped with facial recognition software that collected facial geometry from consumer photographs and sent notifications whenever a photo of a specific person was posted in the galleries. Ackercamps seeks to recover, under the general liability policies issued by Travelers, the amounts it paid to defend and settle a class action lawsuit brought against it under Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"), captioned *K.V., a minor, by and through her Guardian, Lynae Vahle, et al. v. Ackercamps.com LLC*, Case No. 3:22-cv-02256 (S.D. Ill.) (the "Vahle Lawsuit"). Travelers denied coverage based on the Access or Disclosure of Confidential or Personal Information Exclusion and filed this lawsuit seeking declarations of no coverage. (Doc. 49, p. 1).

According to the Defendants, Ackercamps is a purveyor of the "Bunk 1" software. Photographs of children attending a camp are uploaded to an application or website, and the software runs facial recognition technology to create a profile of that parent's child-camper. When the camp posts pictures of activities, the software analyzes the faces in the photographs, matches campers with existing profile pictures, and sends notifications of the creation of the photos to the parents. The photographs can then be sent to Amazon.com which operates the facial recognition software. (Doc. 64)

In 2022, Ackercamps was sued in the Vahle Lawsuit for recovery under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et. seq.. According to Ackercamps, it provided notice of the Vahle Lawsuit in October 2022 and, by December 9, 2022, Travelers denied coverage. Thereafter, at the request of Ackercamps, Travelers reviewed its coverage analysis but ultimately persisted in its denial of coverage.

By February 2023, Ackercamps advised Travelers that settlement opportunities were being pursued in the Vahle Lawsuit and requested the participation of Travelers in the process of settlement. Travelers responded that it was maintaining its denial of coverage. By August, Ackercamps had reached a tentative settlement in the Vahle Lawsuit. Shortly thereafter, the present action was filed.

Traveler's Complaint seeks a declaration pursuant to 28 U.S.C. § 2201 that it has no duty to defend or indemnify Ackercamps under the CGL policies regarding the relief sought in the Vahle Lawsuit and that it has no duty to defend or indemnify Ackercamps under the Umbrella Policies regarding the relief sought in the Vahle Lawsuit.

Ackercamps filed a Counterclaim against Travelers alleging that Travelers has a duty to defend and indemnify Ackercamps. Ackercamps seeks a declaration that Travelers has a duty to defend and indemnify Ackercamps, a declaration that Travelers is estopped from asserting any defenses, a declaration that Travelers acted in bad faith, and an award of actual damages.

## II. THE GENERAL COMMERCIAL LIABILITY POLICIES, THEIR COVERAGES AND EXCLUSIONS

Ackercamps is a named-insured under two lines of commercial general liability ("CGL") policies issued to Togetherwork Holdings, LLC. The first line consists of policies issued by Phoenix for period of 2018 to 2024. The second line consists of policies issued by Travelers for the period of 2017 to 2022. Plaintiff also alleges that Travelers Indemnity issued umbrella policies with Ackercamps as a named-insured for the periods of 2017 to 2024. Additionally, Traveler's Property issued an Excess policy for the period of 2019 to

2024. For the most part, the issues presented here involve provisions in the 2017 to 2018 policies that are identical but somewhat different than the corresponding provisions in the policies covering the period of 2019 to 2024.

The 2017 and 2018 CGL Policies are subject to the same insuring agreement applicable to Coverage A, Bodily Injury and Property Damage Liability which provides for coverage for "bodily injury" or "property" damage "to which this insurance applies. (Doc. 1, ¶41). The Coverage A section of the 2019 to 2024 policies do not differ substantively from the 2017 and 2018 CGL Policies.

The 2017 and 2018 CGL Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person." The 2019 to 2024 CGL Policies differ from the 2017 and 2018 CGL Policies in the sense that the definition is expanded to include "a. Physical harm, including sickness or disease, sustained by a person; or b. Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease." (Doc. 1, ¶ 44).

The CGL Policies all define "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1, ¶ 46).

The CGL policies contain reference to "Coverage B" which indicates that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. (Doc. 1, ¶ 47). The CGL Policies all define "personal and advertising injury" to mean "personal injury" or "advertising injury." (Doc. 1, ¶ 49).

In all of the CGL policies other than the 2024 CGL Policy, "Personal Injury" is defined as "injury, other than "advertising injury", caused by . . . (5) Oral or written publication, including publication by electronic means, of material that: (a) Appropriates a person's name, voice, photograph or likeness;" (Doc. 1, ¶ 49). The 2024 CGL Policy differs in the sense that it does not contain the Paragraph (5) that the 2017-2023 policies contain.

For the issues presented here, the CGL Policies, with the exception of the 2024 CGL Policy, define "advertising injury" as "injury, other than "personal injury", caused by one or more of the following offenses:  . . . (2) Oral or written publication, including publication by electronic means, of material in your "advertisement that: (a) Appropriates a person's name, voice, photograph or likeness;" (Doc. 1, ¶ 51).  The 2024 CGL Policy differs in that it does not include that language. (Doc. 1, ¶ 53).

According to the Complaint, the CGL Policies all contain the "Access Or Disclosure Of Confidential Or Personal Information" exclusion. The 2017 and 2018 CGL Policies add an Access Or Disclosure Of Confidential Or Personal Information exclusion by endorsement, which provides that the insurance does not apply to "Personal injury" or "advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information." (Doc. 1 ¶ 55). The 2019 to 2024 CGL Policy exclusion language does not differ from the 2017 and 2018 CGL Policy endorsement language. (Doc. 1, ¶ 56). Similarly, the 2017 and 2018 CGL Policies, by endorsement and the 2019-2024 CGL Policies by exclusion all exclude from coverage

5

""Bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal information." (Doc. 1, ¶ 57-58).

Also at issue are the Excess and Umbrella Policies. The 2017 and 2018 Umbrella Policies are subject to the same insuring agreement that provided the insurer will pay the loss which is in excess of the "applicable underlying limit" attributable to "bodily injury", "property damage", "personal injury" or "advertising injury". (Doc. 1, ¶ 62). The 2019-2024 Umbrella Policies contain "Excess Follow-Form Liability" provisions and purport to pay for those damages that would otherwise be available in the underlying insurance. Additionally, the 2019-2024 Umbrella Policies, pursuant to Coverage A, are subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except with respect to any provisions to the contrary contained in this insurance. (Doc. 1, ¶ 63).

The 2017 and 2018 Umbrella Policies define "bodily injury" as "bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time." The 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 Umbrella Policies define "bodily injury" the same or substantially the same as that term is defined in the 2019, 2020, and 2021 CGL Policies. (Doc. 1, ¶ 67 & 68).

The 2017 and 2018 umbrella policies contain the same or substantively the same Exclusion – Access Or Disclosure Of Confidential Or Personal Information endorsement as contained in the 2017 and 2018 CGL Policies. The 2019, 2020, 2021, 2022, 2022-2023, and 2023-2024 Umbrella Policies all contain the Access Or Disclosure of Confidential Or

6

Personal Information exclusion which provides that the insurance coverage does not apply to injury arising out of any access to or disclosure of any person's confidential information. (Doc. 1, ¶ 77-78).

### III.  LEGAL STANDARDS

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A fact is 'material' if it is one identified by the law as affecting the outcome of the case." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 722 (7th Cir. 2015). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the Court gives the nonmoving party "the benefit of reasonable inferences from the evidence," it does not construe "speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016). "Where, as here, the parties file cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made." *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017) (citation omitted).

### IV.  ANALYSIS

The dispute here is not whether the policies provide, in the absence of an applicable exclusion, coverage for the "loss" of the nature alleged in the Vahle Lawsuit. Indeed, Travelers does not dispute for the purposes of the summary judgment that the

7

policies provide for coverage for BIPA violations. (Doc. 67, P. 4; Doc. 49 P. 8). So, this Court may dispense with the usual initial question of whether the policy provides coverage before reaching the question of the efficacy of the exclusion. It follows, then, that the threshold question here becomes whether the "Access Or Disclosure Of Confidential Or Personal Information" ("access or disclosure") exclusion is effective as to the Vahle litigation. Answering that question requires interpretation of insurance contracts.

A.    **Interpretation of the Insurance Contracts**

The interpretation of an insurance policy is a matter of state law. See *Windridge of Naperville Condominium Assoc. v. Philadelphia Indemnity Ins. Co.,* 932 F.3d 1035, 1039 (7th Cir. 2019). The parties do not dispute that Illinois Law applies in this case.

Illinois' general approach to construction and interpretation of contracts, including insurance policies, is well-reported. In Illinois, the proper construction of an insurance policy is a legal question, and the Court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in the policy. *See Windridge*, 932 F.3d at 1039 (citing *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill.2d 11, 823 N.E.2d 561, 291 Ill. Dec. 269 (Ill. 2005)). To ascertain the meaning of the policy's language, the Court "must construe the policy as a whole and 'take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.'" *Windridge*, 932 F.3d at 1039 (citing *Traveler's Ins. Co. v. Eljer Mfg.*, 197 Ill. 2d 278, 757 N.E.2d 481, 258 Ill. Dec. 792 (Ill. 2001)). If the policy language is unambiguous, it will be applied

as written, unless it contravenes public policy. *See Windridge*, 932 F.3d at 1039; *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 930 N.E.2d 999, 341 Ill. Dec. 485, 490 (Ill. 2010). Policy provisions, however, are not ambiguous solely because the parties disagree about its interpretations; rather, an ambiguity exists when the policy language is "subject to more than one reasonable interpretation." *Windridge,* 932 F.3d at 1039; *Founders*, 341 Ill. Dec. at 490, 930 N.E.2d 999.

It is helpful at this point to recognize that under Illinois law, an insurer's duty to defend is broader than its duty to indemnify. *United Fire & Cas. Co. v. Prate Roofing & Installations*, LLC, 7 F.4th 573, 579–80 (7th Cir. 2021) (collecting cases applying Illinois law). The insurer must supply the insured a defense so long as the facts alleged "potentially fall within the scope of the policy." *Citizens Ins. Co. of Am. v. Wynndalco Enters.*, LLC, 70 F.4th 987, 995 (7th Cir. 2023) (citing *United Fire & Cas. Co.*, 7 F.4th at 580). So, in determining whether a duty to defend exists, the Court compares the allegations in the underlying complaint with the relevant provisions of the insurance policy and assesses whether the nature of the liability asserted falls within the scope of the policy's coverage or an exclusion. *Lyerla v. AMCO*, 536 F. 3d. 684, 688 (7th Cir. 2008) And, that comparison necessarily requires resort to state law for guidance during the interpretation process.

B.  **The "Access or Disclosure" Exclusion Language**

As noted, "Coverage B" contained in the CGL policies provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages

9

because of "personal and advertising injury" to which this insurance applies. (Doc. 1, ¶ 47). However, the policies all contain an "Access Or Disclosure Of Confidential Or Personal Information" exclusion ("Access or Disclosure").

As noted, the 2017 and 2018 CGL policies contain exclusions regarding Access Or Disclosure Of Confidential Or Personal Information and provide as follows:

> C. ADDITION OF ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION EXCLUSION
> The following exclusion is added to Paragraph 2., Exclusions, of SECTION I - COVERAGES - COVERAGE B
> PERSONAL AND ADVERTISING INJURY LIABILITY:
>
> [this insurance does not apply to:]
>
> Access Or Disclosure Of Confidential Or Personal Information
> "Personal injury" or "advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(Doc. 1-3, P. 119)

The language contained in the 2019 – 2024 CGL policies contains substantively identical exclusions for Access or Disclosure of Confidential or Personal Information. (Ex. D, p. 62; Ex. E, p. 128; Ex. F, p. 343; Ex. G, p. 115; Ex. H, p. 121; Ex. I, p. 127; Ex. J, p. 89; Ex. K, p. 92; Ex. L, p. 94).

The allegations contained in the Vahle Complaint, the language used in the CGL Policies, and the terms defined in BIPA[2] itself, bring us to the kingpost of Travelers'

---

[2] The Court is nevertheless cognizant that "the effect of the exclusion depends on the meaning of the policy rather than the meaning of BIPA", *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 102 F.4th 438 (7th Cir. 2024).

argument for summary judgment and that is the recent case of *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 102 F.4th 438 (7th Cir. 2024) ("*Mitsui*"). In that case, the Court determined that the ordinary understanding of the terms "confidential or personal information" includes handprints and other biometric identifiers usable for identity theft. *Id.* at 440. By the same reasoning, "confidential and personal" information includes information derived from facial geometry. Like handprints, or hand geometry, the automatic recognition of biometric features, such as found with facial geometry, which are extracted for the purpose of biometric recognition and assimilation clearly fit within the common use of the term "confidential and personal" information. Therefore, according to Travelers, the CGL policies exclude from liability coverage under Coverage B the obligation to defend or indemnify Ackercamps in the Vahle Lawsuit.

Following the instant motions becoming ripe, the Court invited further briefing regarding the impact of a recent case decided in this Circuit, *Citizens Ins. Co. of Am. v. Mullins Food Prods., Inc.*, 135 F.4th 1082 (7th Cir. 2025), as amended on denial of reh'g (May 23, 2025). There, the insured, Mullins, was sued in Illinois state court for violating BIPA. The insurer declined to defend Mullins and sought declaratory judgment on the basis, in part, that the "access or disclosure" exclusion relieved it of the obligation to defend or indemnify Mullins. That exclusion barred coverage for a personal and advertising injury "arising out of any access to or disclosure of any person's . . . confidential or personal information." *Id.* at 1086-87. Relevant here, the Court pointed to *Thermoflex* and its endorsement that "the ordinary understanding of 'confidential or personal information' includes handprints and other biometric identifiers usable for

11

identity theft." *Id* at 1092. Travelers agrees with this approach in its supplemental briefing, but Ackercamps does not develop any contrary argument.

It is clear the language of the "access or disclosure" exclusion in *Mullins* is nearly identical to the language here. Further, when read with their plain and ordinary meaning, the operative words here do not need disambiguation to make sense in either application or context. They are not susceptible to more than one meaning such that they can be found to be ambiguous. And, important here is that the use of the word "any", standing alone or in context, naturally conveys "an expansive meaning, that is, one or some indiscriminately of whatever kind." *Thermoflex* at 682 citing *United States v. Gonzales*, 520 U.S. 1, 5 (1997). Likewise, the context here does not suggest a condition or limitation because the Vahle litigation is clearly about access to personal and confidential information. The Vahle Complaint alleges Ackerman's "obtaining, capture, collection and storage" of biometric information. (See Doc. 1-2, ¶58, et. al.). Specifically, it was alleged that the Vahle Plaintiffs "have, at relevant times, had their biometrics – their facial geometry and information, collected, captured and used by [Ackercamps]." (Doc 1-2, ¶22.). Vahle's Complaint is premised on Illinois' BIPA which prohibits the collection, storage and use of "biometric information" and "biometric identifiers." Under BIPA, ""Biometric identifier" means . . . face geometry. IL ST CH 740 § 14/10. Accordingly, the Court reaches the same conclusions reached in the *Thermoflex* and *Mullins* cases that the "access or disclosure" exclusion language clearly and effectively excludes BIPA claims from coverage, including BIPA claims where facial geometry is the operative biometric

identifier.³  However, Ackercamps goes on to argue that the broad grant of coverage under Coverage B is "swallowed up" by the broad terms of the "access or disclosure" exclusion thereby making it ambiguous and illusory.  (Doc. 63, p. 16; Doc. 74, P. 4).

More specifically, Ackercamps claims that the coverage grants under Part B irreconcilably conflict with the access or disclosure exclusion. (Doc. 63, p. 16; Doc. 66, p. 15). Ackercamps argues that the coverage grant "expressly and specifically covers photographs or likeness" and that the access or disclosure exclusion effectively consumes that grant of coverage, thereby making the grant "illusory." *Id.* It is true, as Ackercamps suggest, that under Illinois law, grants of coverage are construed broadly in favor of coverage, *Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.*, No. 85 C 5667, 1986 WL 8380 (N.D. Ill. July 18, 1986), aff'd, 832 F.2d 1037 (7th Cir. 1987), and where an insurer relies on an exclusionary provision, it must be clear and free from doubt that the exclusion prevents coverage. *St. Paul Fire and Marine Ins. Co. v. Antel Corp.*, 899 N.E.2d 1167, 1176 (Ill. App. Ct. 2008); *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 348 (7th Cir. 2010).  So, if the underlying lawsuit presents claims that are even potentially within coverage, the insurer has a duty to defend.

Ackercamps' arguments fail here because the coverage under the policies is not addressed to the capturing or retention of photographs or likenesses, but the *publication* of those things. Coverage B insures against claims for "injury caused by . . . publication .

---

³ Other Courts have found similarly that injuries arising out of alleged BIPA violations fall squarely within the access or disclosure exclusion. See *Westfield Ins. Co. v UCAL Sys. Inc*. 2024 WL 3650118 (N.D., Ill); *Am. Fam, Mut. Ins. Co, v Carnagio Enterprises, Inc.*, 2022 WL 952533 (N.D. Ill. 2022); *Citizens Ins. Co of Am. v. Wynndalco Enterprises, LLC*, 70 F 4th. 987 (7th Cir. 2023).

13

. . of material that: [a]ppropriates a person's . . . photograph . . . or likeness." (Doc. 63, p. 8). This is significant because the Vahle complaint does not allege claims for the publication or disclosure of any photograph or likeness of a person nor does it seek to establish a class of such individuals. (Doc. 1-2, ¶ 72). *Cf. W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 451 Ill. Dec. 1, 183 N.E.3d 47, 50 (Ill. 2021) (noting that "defendant systematically disclosed Plaintiff's and the Class's biometric identifiers and biometric information to SunLync, an out-of-state vendor."). Rather, the Vahle litigation was directed at Ackercamps' collection and retention of biometric information as governed by BIPA. Ackercamps does not point to any allegation contained in the Vahle suit that suggests the claims were based on a publication, whether to one person or many. The Court has also been unable to locate such an allegation.

Further, Ackercamps does not address how the "access or disclosure" exclusion makes the grant of coverage "illusory by wiping out a large express coverage grant" when it clearly does not seek to exclude from coverage the publication of a photograph or likeness. (Doc. 63, p. 8). Contrary to Ackermans' argument, all insurance policy exclusions, by their very nature, conflict in some degree the coverage grant, but not all exclusions eviscerate the coverage language. Indeed, policy exclusions serve the purpose of exempting from a policy's universe of coverage those constellations of risks the insurer does not wish to assume. *See Nicor, Inc. v. Associated Elec. and Gas Ins. Services Ltd.*, 841 N.E.2d 78, 86 (Ill. App. Ct. 2005) ("The policy need not provide coverage against all possible liabilities; if it provides coverage against some, the policy is not illusory."). Here, the policies otherwise provide coverage against a variety of risks, most of which would

not be affected by the "access or disclosure" exclusion. Moreover, it is not difficult to envision scenarios where the policies could provide coverage for a particular risk. A claim for appropriation of one's likeness for commercial purposes or an alleged violation of the Illinois Right of Publicity Act (IL ST CH 765 § 1075/30), could trigger potential coverage. So, this Court recognizes that there is some overlap between the "access or disclosure" exclusion and the coverage grant, but it does not believe that the former, even if construed narrowly, "swallows" or "eviscerates" the latter so as to make that grant "illusory" or ambiguous. In short, it is free from doubt that the "access or disclosure" exclusion prevents effective coverage for the claims of the Vahle lawsuit.

### C. Ackercamps' Motion for Summary Judgment

Many of Ackercamps' arguments in its cross motion for summary judgment have been addressed above.[4] However, Ackercamps goes on to advance a host of other arguments, some of which are undeveloped.

Ackercamps claims that Travelers is estopped from asserting coverage defenses because it failed to defend Vahle and did not timely file a declaratory judgment. (Doc. 66, p. 19). For support, Ackercamps cites to *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999). (Doc. 66, p. 19). However, it is only "when the insurer

---

[4] The fact that the parties have filed cross-motions for summary judgment does not alter the standard. As the Court evaluates each side's motion, the Court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Wayne Manufacturing, LLC v. Cold Headed Fasteners and Assemblies Inc.,* 694 F.Supp.3d 1064, 1071 (N.D. Ind., 2023); *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

fails to take either of these steps and is later found to have wrongfully denied coverage", that the insurer is estopped from raising policy defenses to coverage. *Id.* Here, it was clear there is no potential coverage for the Vahle lawsuit and Traveler's decision to deny coverage was neither wrong nor wrongful.  See *Central Mut. Ins. Co. v. Kammerling,* 571 N.E.2d 806, 809 (Ill. App. Ct. 1991) ("Where an insurer is uncertain as to the extent its policy provides coverage, it has two options. The insurer must defend under a reservation of rights, otherwise the insurer must secure a declaratory judgment as to its rights and obligations before trial or settlement of the underlying action."). Accordingly, Travelers has not waived its policy defenses as to the "access or disclosure" exclusion.

Ackercamps also claims that Travelers vexatiously failed to meaningfully investigate the claims (Doc. 66, P. 19); failed to investigate Ackercamps' publication of photos of selected photos to Amazon (Doc. 66, P. 20); unreasonably relied on policy exclusions (*id*); failed to look for other possible coverage for the Vahle claim (Doc. 66 at 23; and vexatiously refused to settle (*id*). However, Ackercamps does not provide much in way of support for these contentions. Further, as the findings above illustrate, Travelers has a reasonable basis for denying coverage and that is enough to avoid Section 155 liability.[5] *Nine Grp. II, LLC v. Liberty Int'l Underwriters, Inc.,* 168 N.E.3d 956, 968 (Ill.

---

[5] Section 155 provides:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs . . .

215 Ill. Comp. Stat. § 5/155.

App. Ct. 2020) ("[w]here there is a bona fide dispute concerning coverage, the assessment of costs and statutory sanctions is inappropriate, even if the court later rejects the insurer's position" ); *Evergreen Real Est. Servs., LLC v. Hanover Ins. Co.*, 142 N.E.3d 880, 890 (Ill. App. Ct. 2019) ("An insurer is not liable for a violation of section 155 when it takes a reasonable but erroneous position on its coverage obligations where its position is at least arguable.").

## V. CONCLUSION

For the reasons stated above, the Motion for Summary Judgment filed by Plaintiffs/Counter-Defendants, The Phoenix Insurance Company, Travelers Casualty Insurance Company of America, The Travelers Indemnity Company, and Travelers Property Casualty Company of America (Doc. 48) is **GRANTED**. The Motion for Summary Judgment filed by Defendant/Counter-Plaintiff Ackercamps.com LLC (Doc. 64) is **DENIED**.

The Clerk of the Court is **DIRECTED** to enter judgment in favor of the Plaintiffs/Counter-Defendants, The Phoenix Insurance Company, Travelers Casualty Insurance Company of America, The Travelers Indemnity Company, and Travelers Property Casualty Company of America, and against the Defendants/Counter-Plaintiffs, Ackercamps.com LLC, K.V., a minor, by and through her Guardian, Lynae Vahle, and Lynae Vahle, individually and on behalf of all others similarly situated.

**SO ORDERED.**

Dated: September 30, 2025

s/ *David W. Dugan*

---

DAVID W. DUGAN
United States District Judge